UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
LATIA DAVIS,

                Plaintiff,                Civil Case No: 17-cv-3478

    -against-                           Plaintiff Demands a
                                            Trial by Jury
NYU HOSPITALS CENTER,
NYU LANGONE MEDICAL CENTER, INC.,      **COMPLAINT**
MARIA SILVA, Individually,
JUAN CASTILLO, Individually,
GABRIELA LOYOLA, Individually,
CYNTHIA KOUBEK, Individually,

                Defendants.
-----------------------------------------------------------X

Plaintiff, LATIA DAVIS (hereinafter referred to as "Plaintiff" or "DAVIS"), by and through her attorneys, the DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendant NYU HOSPITAL CENTER, NYU LANGONE MEDICAL CENTER, INC. (hereinafter collectively referred to as "NYU"), Defendant MARIA SILVA (hereinafter referred to as "SILVA"), Defendant JUAN CASTILLO (hereinafter referred to as "CASTILLO"), Defendant GABRIELA LOYOLA (hereinafter referred to as "LOYOLA"), defendant CYNTHIA KOUBEK (hereinafter referred to as "KOUBEK"), and (all Defendants collectively referred to as the "Defendants"), upon information and belief, as follows:

## NATURE OF CASE

Plaintiff DAVIS complains pursuant to the Americans with Disabilities Act of 1990 ("ADA") as amended, the Administrative Code of the City of New York and the laws of the State of New York, based upon the supplemental jurisdiction of the Court pursuant to *United*

1

*Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), and 28 U.S.C. §1367 seeking declaratory relief and damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, disability discrimination, retaliation and wrongful termination by Defendants.

### JURISDICTION AND VENUE

1. Jurisdiction of the action is conferred upon the Court as the case involves a Federal Question under the ADA.  The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §§ 1331, 1343, and pendent jurisdiction thereto.

2. Additionally, the Court has supplemental jurisdiction under the State and City laws of New York.

3. Around October 31, 2016, Plaintiff submitted a Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC").  The federal charge number is 520-2016-03527.

4. Around April 4, 2017, Plaintiff received a Right to Sue Letter from the EEOC.

5. Plaintiff satisfied all administrative prerequisites and is filing the case within ninety (90) days of receiving the Right to Sue Letters.

6. Venue is proper in the Southern District of New York, as the events giving rise to the action arose in New York County within the Southern District of New York.

### PARTIES

7. Plaintiff is an individual woman who is a resident of the State of New York, Kings County.

8. At all times material, Defendants NYU collectively are domestic not-for-profit corporations duly existing by the virtue of the laws of the State of New York that do business in the State of

New York.

9. At all times material, Defendant MARIA SILVA (hereinafter referred to as "SILVA") was and is an employee of Defendant.

10. At all times material, SILVA had supervisory authority over Plaintiff with regard to her employment.

11. At all times material, Defendant JUAN CASTILLO (hereinafter referred to as "CASTILLO") was and is an employee of Defendant.

12. At all times material, CASTILLO had supervisory authority over Plaintiff with regard to her employment.

13. At all times material, Defendant GABRIELA LOYOLA (hereinafter referred to as "LOYOLA") was and is an employee of Defendant.

14. At all times material, LOYOLA had supervisory authority over Plaintiff with regard to her employment.

15. At all times material, Defendant CYNTHIA KOUBEK (hereinafter referred to as "KOUBEK") was and is an employee of Defendant.

16. At all times material, KOUBEK had supervisory authority over Plaintiff with regard to her employment.

## MATERIAL FACTS

17. Plaintiff suffers and continues to suffer from a medical condition that qualifies as a disability in accordance with the Americans with Disabilities Act ("ADA").

18. Around 2007, Plaintiff was diagnosed with Lymphoma and Leukemia.

19. Despite these hardships, Plaintiff did not allow her medical condition to interfere with her

employment, even while she underwent intense chemotherapy from 2007 -2008.

20. Around 2010, Plaintiff was diagnosed with Congestive Heart Failure and Pulmonary Embolism.

21. Prior to Plaintiff's employment with Defendant NYU, Plaintiff was employed by Advantage Care Physicians for approximately four years.

22. Around April 4, 2016, Plaintiff resigned from her previous employment of nearly four years in order to commence her new employment with NYU Langone Medical Center.

23. Around April 18, 2016, Plaintiff began her employment with Defendant NYU Langone Medical Center as a Medical Secretary.

24. At all times material, Defendant NYU Medical was aware of Plaintiff's medical condition.

25. Around May 26, 2016, Plaintiff had a conversation with Defendant SILVA regarding Plaintiff's medical condition.  Plaintiff explained in detail that she suffered from a number of medical conditions, and indicated that the medical conditions would not interfere with her ability to perform her work duties.

26. Defendant SILVA requested that Plaintiff inform her should she be required to miss work as a result of her illnesses and Defendant SILVA asked if the Human Resources Department was aware of the Plaintiff's medical condition.  Plaintiff responded in the affirmative, and stated that Occupational Health Services also had the information on file and that she was cleared for work by Nurse Bridget Packard Around April 18, 2016.

27. Plaintiff's first week of work, Around April 18, 2016, focused around front desk training at Human Resources New Hires Site, 1 Park Ave. New York, New York 10016.

28. Defendants did not provide Plaintiff with adequate workflow rotating medical secretary training.

29. Defendants did not assign Plaintiff to a permanent floor.  Plaintiff shadowed FGP Medical Secretary, Laurie Rodriguez.

30. Around June 1, 2016, Defendant LOYOLA emailed Plaintiff stating that Plaintiff was to attend a meeting for a one-month follow-up evaluation.

31. None of the new hires other than Plaintiff were required to attend a one-month evaluation. Plaintiff was singled out for this evaluation because of her disability.

32. Defendants LOYOLA, SILVA and CASTILLO attended the evaluation meeting to discuss Plaintiff's role and duties. At the conclusion of the meeting, Defendant LOYOLA requested confirmation from Plaintiff that Plaintiff had spoken with Defendant SILVA about adjustments to Plaintiff's morning schedule to accommodate her upcoming medical appointments. Plaintiff assured LOYOLA that her appointments were approved by SILVA.

33. Around June 7, 2016, Plaintiff attended a medical appointment with her cardiologist, which was approved by Plaintiff's Supervisor SILVA. The appointment began at 8:30 a.m. Plaintiff's scheduled time to arrive at work was 10:30 a.m. Plaintiff advised Defendant of the possibility of her running a few minutes late because of the appointment, and indicated she would inform Defendants if she was going to be late, and provide a physician's note.

34. Due to her medical appointment, Plaintiff arrived at work at approximately 11:05 a.m. Plaintiff immediately sent an email to LOYOLA, SILVA and CASTILLO, which included her physician's note attached.

35. On several other occasions, Plaintiff provided Defendants with documentation regarding her medical condition.

36. Around June 9, 2016, Plaintiff was in need of medical attention and saw a doctor at her site on her lunch break from 1:30 p.m. - 2:30 p.m. The doctor, Dr. Matamala, recommended that Plaintiff schedule a sonogram immediately. Plaintiff scheduled an appointment for June 10, 2016, at 8:30 a.m. at NYU Langone Radiology Department at 530 First Avenue 32nd street New

York, NY 10016.

37. Plaintiff immediately emailed LOYOLA and SILVA informing them, as her supervisors, about the appointment.

38. Plaintiff was scheduled to work at 9:30 a.m. on June 10, 2016.

39. Around June 10, 2016, Plaintiff arrived at work immediately after her appointment at 10:30 a.m. Plaintiff immediately sent her supervisors an email with attached physician's note.

40. Around June 10, 2016, Defendant sent all employees an email with the upcoming schedule. Defendant's employee, Laurie Rodriguez, approached Plaintiff regarding June 14, 2016 scheduling. Laurie Rodriguez reprimanded Plaintiff for not informing her of her medical appointments. Laurie Rodriguez stated that it "did not look right as a new employee to have appointments that disrupts the center."

41. Plaintiff became extremely concerned because she had taken all the required steps to have her medical appointments approved. Plaintiff had received approval from her supervisors, and did not feel she was required to inform her contemporary at work of her approved medical appointments when she had informed her supervisors and received the proper permission.

42. Defendant Rodriguez discriminated against Plaintiff because of her disability.

43. Defendants were aware of Plaintiff's ongoing medical condition, and Plaintiff's medical condition was on file with the Human Resources Department and Occupational Health Services.

44. Plaintiff requested a meeting with Supervisors SILVA and LOYOLA to discuss the discrimination she was subjected to as a result of her disability. Plaintiff addressed the conversation she had with Laurie Rodriguez. Plaintiff expressed that there was a lack of communication amongst the staff regarding the days Plaintiff had medical appointments. Plaintiff informed Defendants that she was capable and willing to perform the duties of her job,

including a night rotation with her colleague Laurie Rodriguez if necessary.

45. In closing the meeting, Defendant LOYOLA stated that she had much to think about and would reach out to Plaintiff the following week.

46. Around June 13, 2016, Plaintiff was called into a meeting with Defendants LOYOLA and SILVA and Defendant LOYOLA asked Plaintiff if her medical condition would prevent her from performing her work duties.  Plaintiff reassured Defendants that her medical condition would not prevent her from performing her work duties, as she had been receiving treatment for her medical conditions since 2007, including treatment at NYU Langone Cancer Treatment Center, yet she had maintained successful full-time employment for nearly four years prior to accepting her position with Defendants.

47. Around June 16, 2016, Defendant's Supervisors, LOYOLA and SILVA, wrongfully terminated Plaintiff due to her disability, and in retaliation for her complaints regarding the discrimination she faced as a result of her disability.   Defendant LOYOLA stated "it's just not working out."

48. Defendant wrongfully terminated Plaintiff only three days after asking her if her medical condition would prohibit her from performing her duties and Plaintiff's response that it would not.

49. Defendant discriminated against Plaintiff on the basis of her disability.

50. Plaintiff contacted Employees Relations and scheduled a meeting with NYU Employees Relations Manager, Justin Lilien, for June 21, 2016.

51. Around June 21, 2016, Mr. Justin Lilien met with Plaintiff to discuss the discriminatory behavior she was forced to endure while employed by Defendant.

52. Plaintiff asked Lilien about the one-month evaluation meeting which was never discussed with Plaintiff during the hiring process, nor was a possibility of termination during or before a

three-month probation period mentioned. Mr. Lilien stated that NYU did not have a policy to do a one-month evaluation, thus demonstrating that Plaintiff had in fact been singled out for such evaluation. Mr. Lilien advised Plaintiff that her termination was due to lunch schedule issues. Plaintiff provided Mr. Lilien with accurate time sheets showing Plaintiff had no lunch schedule discrepancies. Plaintiff also indicated that throughout her employment she had never received the two, fifteen-minute breaks, which her employee handbook showed she was entitled to.

53. At the close of the meeting Mr. Lilien stated he would investigate the matter and contact Plaintiff in one week.

54. Around July 1, 2016, Mr. Lilien contacted Plaintiff and stated that the termination was final. Mr. Lilien emailed Plaintiff a letter of termination on the grounds of "probationary period."

55. Defendants discriminated against Plaintiff on the basis of her disability.

56. Defendant Retaliated against Plaintiff because of her disability and requests for reasonable accommodation under the ADA, as well as for her complaints of discrimination.

57. Defendants wrongfully terminated Plaintiff because of her disability in in retaliation for her complaints of discrimination.

58. These actions constituted a serial and continuing course of conduct in violation of the applicable federal, state and city laws.

59. As a result of Defendants' actions, Plaintiff was humiliated, degraded, victimized, embarrassed, and emotionally distressed.

60. As a result of the Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

61. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue

to suffer the loss of income, the loss of a salary, benefits and other compensation, which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

62. As Defendants' conduct has been calculated, malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all Defendants jointly and severally.

63. The above are just some of the examples of unlawful and discriminatory conduct to which Defendants subjected Plaintiff.

64. Plaintiff hereby demands reinstatement to her position.

### AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT (NOT AGAINST ANY INDIVIDUAL DEFENDANTS)

65. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of the complaint.

66. Plaintiff claims Defendant NYU violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

67. SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

68. Defendant violated the section cited herein by failing to consider Plaintiff's requests for a

reasonable accommodation, as well as creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of her disability and for having filed a prior complaint against a superior.

69. Defendant's actions constituted a serial and continuing course of conduct in violation of the applicable federal, state and city laws.

70. DEFENDANT NYU violated the above, and Plaintiff suffered numerous damages as a result.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER
## THE AMERICANS WITH DISABILITIES ACT
## (NOT AGAINST ANY INDIVIDUAL DEFENDANTS)

71. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of the complaint.

72. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by the chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the chapter.

73. DEFENDANT NYU violated the above, and Plaintiff suffered numerous damages as a result.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## NEW YORK STATE LAW
## (AGAINST ALL DEFENDANTS)

74. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of the complaint.

75. New York State Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic

characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

76. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her disability.

77. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## NEW YORK STATE LAW
## (AGAINST ALL DEFENDANTS)

78. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of the complaint.

79. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which the section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under the article."

80. Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against Plaintiff.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## NEW YORK STATE LAW
## (AGAINST ALL DEFENDANTS)

81. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of the complaint.

82. New York State Executive Law §296(6) further provides that "It shall be an unlawful

discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under the article, or to attempt to do so."

83. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

84. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

85. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of    any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

86. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against the Plaintiff because of Plaintiff's disability.

87. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

**AS A SEVENTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE
(AGAINST ALL DEFENDANTS)**

88. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of the complaint.

89. The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under the chapter. . . "

90. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1) (e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

**AS AN EIGHTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE
(AGAINST ALL DEFENDANTS)**

91. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

92. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under the chapter, or attempt to do so."

93. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

**AS A NINTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE
(AGAINST ALL DEFENDANTS)**

94. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

95. Section 8-107(19), entitled Interference With Protected Rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of her or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to the section."

96. Defendants violated the above section as set forth herein.

**AS A TENTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE
(AGAINST ALL DEFENDANTS)**

97. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

98. Section 8-107(13) entitled Employer Liability For Discriminatory Conduct By Employee, Agent or Independent Contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or

failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

99. Defendants violated the above section as set forth herein.

    **WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

Dated:  New York, New York
         May 10, 2017

                                       DEREK SMITH LAW GROUP, PLLC
                                       Attorneys for Plaintiff

By:      */s/ Abraham Z. Melamed*
                                       Abraham Z. Melamed, Esq.
                                       30 Broad Street, 35th Floor
                                       New York, New York 10004
                                       (212) 587-0760